# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Nirmaljit K. Rathee, M.A., Ph.D.  :

                        :

    vs                        :     Civil Action No.

                        :     Jury Trial Demanded

Delaware State University       :

## *Complaint*

Plaintiff, Nirmaljit K. Rathee, M.A., Ph.D., hereby brings a series of claims against Defendant, Delaware State University, of which the following is a statement:

## *Jurisdiction and Venue*

1. This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. §§ 2000d-2, 2000e-5(f), this action being brought under the Age Discrimination in Employment Act of 1967, Pub. L. 90-202, 29 U.S.C. §§ 621-634 (the "ADEA"), Title VII of the Civil Rights Act of 1964, as amended, Pub. L. 88-352, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991), to redress and enjoin the discriminatory practices of defendant.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this case occurred in this judicial district.

*The Parties*

3. Plaintiff, Nirmaljit K. Rathee, M.A., Ph.D., is an Asian female citizen of the United States and a resident of this judicial district.

4. Defendant Delaware State University is an educational institution with a principal place of business at 1200 N. DuPont Highway, Dover DE 19901.

5. At all times relevant to this action, defendant was an "employer" within the meaning of Section 1981.

6. The acts set forth in this Complaint were authorized, ordered, condoned, ratified and/or done by defendant's officers, agents, employees and/or representatives while actively engaged in the management of defendant's business.

7. Dr. Rathee timely filed a charge of age, national origin, and age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), received a Notice of Right to Sue ("NRTS") from the EEOC, and has commenced this action within 90 days of receipt of the NRTS.

*Background Facts*

8. On February 1, 2016, defendant appointed Dr. Ratheee to the position of Graduate Program Director / Associate Professor in the College of Education, Health and Public Policy, retroactively effective July 11, 2015, after a national search and official interview and selection process. *See* Ex. 1 attached hereto and

made a part hereof. Associated with the position of Graduate Program Director was a stipend of $5,000.00.

9. Dr. Rathee is an Asian female, age 60. She began her career at defendant in 2009 when she was appointed Assistant Professor. Defendant promoted her to Associate Professor in 2012, and appointed her Interim Director, Education Graduate Programs, in 2014.

10. On May 25, 2019, defendant appointed Dr. Rathee to the position of Professor and Director, Education Graduate Programs, in the Department of Education. *See* Ex. 2 attached hereto and made a part hereof.

11. As Professor and Director, Education Graduate Programs, Dr. Rathee's duties and responsibilities included teaching graduate-level courses, overseeing the development and management of graduate programs in education, and enhancing the overall educational experience for graduate students. This role involves curriculum planning, ensuring program quality and accreditation standards, faculty management, and student academic advising, as well as serving as the Chairperson of the Dissertation Advisory Committee and Member of the Research and Dissertation Advisory Committee. As Graduate Program Director, Dr. Rathee reported to the Dean of Education.

12. Dr. Rathee is a renowned Educator with an impressive record of research, scholarship, and professional accomplishments. *See* Ex. 3 attached hereto and made a part hereof.

13. Through Dr. Rathee's tireless efforts, defendant's Education Department has grown from a handful of students in all programs to its current complement of over 450 students in the graduate programs alone. *See* Ex. 4 attached hereto and made a part hereof. In a recent news article published in the Delaware Business Times on November 28, 2023, the exceptional growth in the enrollment of the Education Graduate Program was mentioned by the University President, Dr. Allen. *See* Ex. 5 attached hereto and made a part hereof.

14. Dr. Rathee held the position of Director of Education Graduate Programs until December 18, 2023, when Dr. Emily Williams, a Black female and Respondent's Vice Provost for Academic Affairs and Acting Dean, College of Humanities, Education, and Social Science, removed Dr. Rathee as Director of Education Graduate Programs effective December 18, 2023 (the "Removal Memorandum"). *See* Ex. 6 attached hereto and made a part hereof.

15. In the Removal Memorandum, Dr. Williams recited a number of reasons for her action, none of which, as set forth herein, have any merit. Despite the reasons stated in the Removal Memorandum, defendant removed Dr. Rathee as

4

Director of Education Graduate Programs as part of a campaign of discriminatory and harassing actions taken against Dr. Rathee, conceived, directed, and implemented by Dr. Shelley Rouser, a Black female and Chair of defendant's Education Department, because of her race, national origin, and age, and in retaliation for Dr. Rathee's complaints about Dr. Rouser's discrimination and harassment.

16. In the Removal Memorandum, Dr. Williams cited various portions of the Collective Bargaining Agreement between defendant and the DSU Chapter of American Association of University Professors (2016-2021) (the "CBA") as providing a basis and rationale for defendant's decision to remove Dr. Rathee as Director of Education Graduate Programs. However, the CBA provides neither a basis, rationale, or authority for the decision to remove Dr. Rathee as Director of Education Graduate Programs. Rather, an analysis of the CBA and the actions taken by defendant against and involving Dr. Rathee beginning in early 2023 demonstrates that defendant breached the CBA in numerous and significant respects. *See* Ex. 7 attached hereto and made a part hereof.

17. In the Removal Memorandum, Dr. Williams also referenced a Title IX Complaint as a reason for removing Dr. Rathee as Director of Education Graduate Programs. The filing of the Title IX Complaint, on the recommendation of Dr. Rouser (as noted in the Title IX Complaint itself), was part of the campaign to

remove Dr. Rathee.  The Title IX Complaint was baseless, but as a direct result of it, defendant placed Dr. Rathee on Administrative Leave, which allowed the campaign against her to continue.  For example, although being on administrative leave did not prevent Dr. Rathee from discharging her duties, Dr. Williams prohibited Dr. Rathee from participating in the dissertation defense of a graduate student with whom she had worked and directed her to inform students they were to contact Dr. Shelly Rouser instead of continuing to communicate with Dr. Rathee.  *See* Ex. 8 attached hereto and made a part hereof.  During her administrative leave, defendant prohibited Dr. Rathee from presiding over four (4) dissertation defenses and three (3) dissertation research proposal presentations involving students with whom she had worked prior to going out on leave.

18. On December 6, 2023, defendant's Title IX Coordinator informed Dr. Rathee that the Title IX Complaint filed against her had been mandatorily dismissed based on the fact that the alleged conduct, even if proved, would not constitute an act prohibited by the DSU Non-Discrimination, Sexual and Gender Misconduct and Title IX Policy.

19. On December 15, 2023, Dr. Rathee wrote to Dr. Williams to complain about actions taken by various persons to undermine her position and career at DSU and prevent her from returning to work at DSU, and that falsely implied her disassociation from the Education Graduate Programs.  In the email, Dr. Rathee

requested a meeting with Dr. Williams to address her concerns. *See* Ex. 9 attached hereto and made a part hereof. Dr. Williams never responded to Dr. Rathee's December 15, 2023 email.

20. That same day, defendant formally informed Dr. Rathee, Dr. Williams and others by letter that the investigation of the Title IX Complaint had concluded and that effective December 18, 2023, Dr. Rathee was cleared to return to work. *See* Ex. 10 attached hereto and made a part hereof. The letter referenced allegations of "official misconduct' with an incorrect date, but failed to mention that the Title IX Complaint against Dr. Rathee had been mandatorily dismissed. Furthermore, rather than simply stating that Dr. Rathee could resume her duties upon the conclusion of the administrative leave, defendant directed Dr. Rathee to contact Dr. Williams about her return to work.

21. By mid-December, however, one of the objectives of the campaign against Dr. Rathee had been achieved, because on December 18, 2023, Dr. Williams issued the Removal Memorandum. Signficiantly, although the Title IX Complaint had been mandatorily dismissed on December 6, 2023, defendant did not order the conclusion of the administrative leave until December 15.

22. In the Removal Memorandum, Dr. Williams also accused Dr. Rathee of having committed a serious academic integrity violation that allegedly occurred

under her purview as Graduate Program Director in connection with an alleged incident of plagiarism involving an Ed.D. student.  In making that accusation, Dr. Williams made an unwarranted personal attack on Dr. Rathee's integrity.

23. Dr. Rathee did not commit any academic integrity violation in connection with this incident; rather, exercising her jurisdiction as functional head of the Education Graduate Programs, she had already resolved the matter by preparing a "Development Plan" for the student in question. Dr. Rathee made this clear in an email to Dr. Williams on December 18, 2023, in response to the Removal Memorandum.  *See* Ex. 11 attached hereto and made a part hereof.  A detailed analysis of this incident further demonstrates that Dr. Rathee did not commit any academic integrity violation in connection with this incident.  *See* Ex. 12 attached hereto and made a part hereof.

24. On December 11, 2023 Dr. Rouser copied significant content directly from the approved development plan Dr. Rathee had developed on Aug. 16, 2023, and presented it as her own in a Memorandum to Dr. Emily Williams and Provost Dr. Delauder.  *See* Ex. 13 attached hereto and made a part hereof.  In the December 11, 2023, Memorandum, Dr. Rouser falsely insinuated that no actions were taken after August 14, 2023, in order to position herself as the originator of the action plan for the student in question, effectively intentionally misinforming high-level leadership at Respondent. Dr. Rouser used the student's original plagiarized

8

document instead of the new revised version submitted by Dr. Alexander on October 16, 2023, to the members of the student's research committee. Moreover, Dr. Rouser disregarded significant developments that occurred after August 16, 2023, such as the revision and subsequent resubmission of the proposal for review and feedback on October 16, 2023, and the rescheduling of the proposal defense planned after November 3, 2023.

25. The act of plagiarism was committed by the student in connection with submission of her research proposal. However, defendant took no action against her Committee Chair, and he continues to serve uninterruptedly. Further, the Development Plan prepared by Dr. Rathee had tasked Dr. Sonya Sedegui, a Black female, as an external advisor to support the student while the student reconstructed her research proposal. Dr. Sedegui subsequently admitted she had not even contacted the student and, thus, failed to discharge her responsibilities. Dr. Sedegui, failed to engage with her duties and subsequently, based on Dr. Rouser's recommendation, filed the baseless Title IX Complaint against Dr. Rathee. Instead of taking any action against Dr. Sedegui, defendant rewarded her with a full-time Post-Doctoral position and a full faculty teaching load as an adjunct faculty.

26. Following the Removal Memorandum and in furtherance of the campaign against Dr. Rathee, despite the fact that she had been teaching graduate

and research courses for the prior about 10 years, under the guise of reorganizing and restructuring the Education Graduate Program, Dr. Rouser effectively demoted Dr. Rathee by assigning her to teach three undergraduate physical education courses during the Spring Semester 2024, and assigning adjunct faculty members to teach the graduate courses Dr. Rathee typically taught. Dr. Rathee had pleaded with both Dr. Rouser and Dr. Williams regarding the unfairness of this assignment and its potential negative impact on her career. They ignored her pleas. This action violated CBA Sections 12.2.8.1 and 12.2.14.5.

27. In furtherance of the campaign against Dr. Rathee, defendant pressured graduate students to remove her as Chairperson of the Dissertation Committee.

28. In furtherance of the campaign against Dr. Rathee, on January 12, 2024, Dr. Rouser appointed a new Acting Director of Education Graduate Programs. The email announcing the appointment was sent to the adjunct graduate faculty and the program students, with the exception of Dr. Rathee. *See* Ex. 14 attached hereto and made a part hereof.

29. On January 18, 2024, due to the extreme stress, mental anguish, and emotional distress suffered by Dr. Rathee as a result of the campaign against her, Respondent approved her request for leave under the FMLA submitted on January

5, 2024, to care for a family member with a serious health condition.  *See* Ex. 15 attached hereto and made a part hereof.  Before FMLA approval, Dr. Rouser tried to deny Dr. Rathee's FMLA rights.

30. In furtherance of the campaign against Dr. Rathee, Dr. Rouser routinely falsely conveys to students and faculty that Dr. Rathee will not be returning to DSU. Such assertions by Dr. Rouser corroborate her predetermined plan, supported by Dr. Williams, to remove Dr. Rathee from defendant and to prevent her from working with the graduate students while other faculty, even newly appointed or with less experience than Dr. Rathee are allowed to work with the graduate students.

31. In furtherance of the campaign against Dr. Rathee, defendant attempted to coerce graduate students with whom Dr. Rathee had worked the previous three years in preparing their dissertation to remove her as the Chairperson of their Dissertation Committees, and then other faculty members would be assigned as their Chairpersons.  *See* Ex. 16 attached hereto and made a part hereof.  However, Committee chairpersons are not assigned; a student chooses their committee chairs and members on a form, which is then approved by the Education Department and the Graduate School Dean.  Many of the students defendant attempted to coerce refused to disassociate themselves from Dr. Rathee

11

based on their satisfaction with her guidance. *See* Ex. 17 attached hereto and made a part hereof.

32. Defendant attempted to pressure these graduate students despite the fact that no policy or rule prohibits her from continuing to advise these students and that such advisement does not require lab work or face-to-face meetings, but rather is done virtually. Moreover, no policy or rule prohibits Dr. Rathee from serving as the Chairperson of their Dissertation Committees while on leave. These students effectively have completed their dissertations, the defenses of their dissertations are scheduled for March 2024, and it would be improper to remove Dr. Rathee as their Chairperson, as doing so would allow the new Chairperson to receive credit for work they did not do. Serving as a Dissertation Committee Chairperson is a significant professional accomplishment.

33. The second ground mentioned in the Memorandum issued by Dr. Williams is that Dr. Rathee *"did not have graduate school files (student records, et.al.) in a shared drive accessible to the Department Chair and other faculty members as designated by the Department Chair."* Dr. Williams further observed that *"these situations are not suitable for the leadership necessary for the Graduate Program Director within the DSU Department of Education."* This is a completely baseless allegation because there is no university policy, provision in the CBA, or directive of any kind to store the data in any shared drive. Moreover,

Dr. Rouser was fully aware that there was no secretarial support for the Education Graduate Programs for approximately one year; it was highly improper to expect Dr. Rathee to perform the tasks of a secretary as well. In any event, all necessary data and information resides with the CAEP Coordinator of the Department at AIMS, on the blackboard, on the banner, and with the Graduate School.

34. On Janaury 22, 2024, Dr. Rouser publicly announced on social media (Facebook, LinkedIn, and X) that a new Director for the Education Graduate Program had been appointed, without acknowledging Dr. Rathee's tenure or contributions as Director. This action damaged Dr. Rathee's professional reputation, credibility, and future career opportunities because the extensive reach of the social media announcement, particularly among education professionals, conveyed a negative impression regarding the circumstances of Dr. Rathee's departure from the Director position.

35. Defendant's actions described above constitute discrimination, harassment, and retaliation against Dr. Rathee because of her race, national origin, and age, all in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act.

36. By reason of defendant's discrimination, harassment, and retaliation, Dr. Rathee suffered extreme harm, including loss of income and other employment benefits, loss of professional opportunities, embarrassment and humiliation.

37. Defendant acted and failed to act willfully, maliciously, intentionally and with reckless disregard for Dr. Rathee's rights.

## Count I

*Title VII of The Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.*

38. Plaintiff restates and realleges paragraphs 1-37, inclusive, as though set forth here in full.

39. Dr. Rathee had a federal statutory right under Title VII to be accorded the same rights as were enjoyed by non-Asian employees with respect to the terms and conditions of their employment relationship with defendant and to the enjoyment of all benefits, privileges, terms and conditions of that relationship.

40. Defendant's conduct described above deprived Dr. Rathee of the rights, privileges, and immunities guaranteed to her under Title VII.

41. By reason of defendant's conduct, Dr. Rathee is entitled to all legal and equitable relief available under Title VII.

## Count II

*The Age Discrimination in Employment Act, 29 U.S.C. §§621-634*

42. Plaintiff restates and realleges paragraphs 1-37, inclusive, as though set forth here in full.

43. Dr. Rathee had a federal statutory right under the ADEA to be accorded the same rights as were enjoyed by employees under the age of 40 and/or significantly younger than her with respect to the terms and conditions of their employment relationship with defendant and to the enjoyment of all benefits, privileges, terms, and conditions of that relationship.

44. Defendant's conduct described above deprived Dr. Rathee of the rights, privileges, and immunities guaranteed to her under the ADEA.

45. By reason of defenant's conduct, Dr. Rathee is entitled to all legal and equitable relief available under the ADEA.

### *Jury Demand*

46. Dr. Rathee hereby demands a trial by jury as to all issues so triable.

### *Prayer for Relief*

Wherefore, Plaintiff, Nirmaljit K. Rathee, M.A., Ph.D., respectfully prays that the Court:

a. adjudge, decree and declare that defendant has engaged in illegal race, national origin, and age discrimination, harassment and retaliation, and that the actions and practices of defendant complained of herein are violative of her rights under Title VII and the ADEA;

  b. order defendant to provide appropriate job relief to Dr. Rathee, including reinstatement to the position of Director of Education Graduate Programs;

  c. enter judgment in favor of Dr. Rathee and against defendant for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, reinstatement, past and future mental anguish and pain and suffering, in amounts to be determined at trial;

  d. order defendant to pay the attorney's fees, costs, expenses and expert witness fees of Dr. Rathee associated with this case;

  e. grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

  f. retain jurisdiction until such time as the Court is satisfied that defendant has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.

         Respectfully Submitted,

         */s/Kate Butler*_____
         DE Bar ID No. 6017
         Kate Butler Law LLC
         1509 Gilpin Avenue, Suite 3
         Wilmington DE 19806
         302 966 9994 tel
         kate@katebutlerlaw.com

/s/*Robert T Vance Jr*\*\*
Law Offices of Robert T Vance Jr
123 South Broad Street, 15th Floor
Philadelphia PA 19109
267 887 0172 tel / 215 501 5380 fax
rvance@vancelf.com
\*\*pending admission *pro hac vice*

*Attorneys for Plaintiff, Nirmaljit K. Rathee, M.A., Ph.D.*

17