**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NIRMALJIT K. RATHEE, M.A., PH. D., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 24-777 TMH |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

**SAUL EWING LLP**
James D. Taylor, Jr., Esquire (#4009)
Marisa R. De Feo, Esquire (#6778)
Jennifer M. Becnel-Guzzo, Esquire (#4492)
1201 N. Market Street, Suite 2300
Wilmington, DE  19899
(302) 421-6800
james.taylor@saul.com
marisa.defeo@saul.com
jennifer.becnel-guzzo@saul.com

*Counsel for Defendant Delaware State
University*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS ........................... 1

SUMMARY OF ARGUMENT .................................................................................................. 2

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT ............................................................................................................................. 8

    I.     STANDARD OF REVIEW. ...........................................................................................9

    II.    THE COURT SHOULD DISMISS PLAINTIFF'S RACE/NATIONAL ORIGIN DISCRIMINATION CLAIM BECAUSE PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO SUSTAIN A CLAIM UNDER TITLE VII. .............................................9

        A.    Plaintiff Admits She Downplayed And Did Not Report The Plagiarism – Leaving Her Unqualified To Serve As Director. ...................................................................... 10

        B.    Plaintiff Does Not Allege Circumstances Giving Rise To An Inference Of Intentional Discrimination. ................................................................................................... 12

    III.   PLAINTIFF'S AGE DISCRIMINATION CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO SUSTAIN A CLAIM UNDER THE ADEA. ..................................................................................................13

    IV.   PLAINTIFF'S FMLA CLAIM MUST BE DISMISSED AS PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO INFER RETALIATION. ..................................14

CONCLUSION......................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apau v. Printpack Inc.*,
   722 F.Supp.2d 489 (D. Del. 2010)..................................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................9, 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................................9

*Bellounis v. Middle-E. Broad. Network, Inc.*,
   2019 WL 5654307 (E.D. Va. Oct. 31, 2019)..............................................................................11

*Budhun v. Reading Hosp. & Med. Ctr.*,
   765 F.3d 245 (3d Cir. 2014)..........................................................................................................14

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016)..........................................................................................................10

*Durst v. City of Philadelphia*,
   798 F.App'x 710 (3d Cir. 2020) ..................................................................................................12

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)............................................................................................................9

*Garnett v. Bank of America*,
   243 F.Supp.3d 499 (D. Del. 2017).........................................................................................10, 13

*Houston v. Easton Area Sch. Dist.*,
   355 F.App'x. 651 (3d Cir. 2009) ..................................................................................................12

*Kahan v. Slippery Rock Univ. of Pennsylvania*,
   50 F.Supp.3d 667 (W.D. Pa. 2014), *aff'd*, 664 F.App'x 170 (3d Cir. 2016) ...........................12

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
   691 F.3d 294 (3d Cir. 2012).........................................................................................................14

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)........................................................................................................................11

*O'Connor v. Consol. Coin Caterers Corp.*,
   517 U.S. 308 (1996).......................................................................................................................11

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)................................................................................................9

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013)........................................................................................................16

*Watson v. Dep't of Servs. for Child., Youth & Their Fams. Delaware*,
    932 F. Supp. 2d 615 (D. Del. 2013)..................................................................................3

*White v. FedEx Corp.*,
    2019 WL 5102168 (M.D. Pa. Oct. 11, 2019) ...............................................................13

*Willis v. UPMC Children's Hosp. of Pittsburgh*,
    808 F.3d 638 (3d Cir. 2015)...........................................................................................13

**Statutes**

42 U.S.C. §2000e–2(a)(1)....................................................................................................9

**Other Authorities**

Rule 12(b)(6).............................................................................................................3, 8, 9

## **INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS**

There is nothing more important to an institution of higher learning than academic honesty and integrity.  Here, when Delaware State University ("Defendant," "DSU," or the "University") discovered that its Graduate Program Director, Plaintiff Nirmaljit K. Rathee, failed to report a student's heavily-plagiarized doctoral proposal, the University removed Plaintiff from her position as Graduate Program Director and returned her to her previous role as a fully-tenured professor. In response, Plaintiff requested, and was granted, leave under the Family and Medical Leave Act ("FMLA").  Thereafter, as Plaintiff was preparing to return to the University from leave, she was assigned three undergraduate courses to teach.  Believing that she should teach graduate and not undergraduate courses, Plaintiff balked, asked for additional leave (she was not entitled to additional leave), and asked to teach/work remotely (which request was denied).  When Plaintiff failed to meet with DSU officials to plan her return to teaching, she was ultimately terminated for cause.

Plaintiff claims she was removed from her position, and then terminated, not because of her failure to report the plagiarism or teach assigned classes, but because of: (i) her race and national origin (she is Asian), (ii) her age (she is 60), and (iii) her taking leave under the FMLA. None of these allegations are true.  Even after her removal as Graduate Program Director, she retained her position as a fully-tenured professor and was assigned classes to teach.  Plaintiff has no one to blame but herself for her termination.

Plaintiff filed her Second Amended Complaint on November 15, 2024 ("Second Am. Compl.") (D.I. 17).  The University now moves to dismiss, as Plaintiff has still failed to plead facts sufficient to support her claims.

1

## SUMMARY OF ARGUMENT

1.      Count I, an alleged Title VII discrimination claim, fails because Plaintiff has failed to plead facts sufficient to support such claim; chiefly, she has failed to establish an inference of intentional discrimination based on race or national origin.

2.      Count II, an alleged age discrimination claim, fails because Plaintiff has failed to plead facts sufficient to support such claim; chiefly, she has failed to establish an inference of intentional discrimination based on her age.

3.      Count III, an alleged claim of retaliation for taking leave under the FMLA, fails because Plaintiff has failed to plead facts sufficient to support such claim; indeed, Plaintiff was assigned to teach classes following her leave, but balked at teaching undergraduate instead of graduate classes, sought additional leave to which she was not entitled, and sought to teach and work remotely, a request which was denied.  Only after Plaintiff failed to meet with University officials to better plan her return to teaching from her leave was she terminated.  Put another way, DSU was trying to work with Plaintiff after her leave ended – and took no actions in retaliation for such leave.

## STATEMENT OF FACTS[1]

Plaintiff, a sixty-year-old Asian woman, started working at the University in 2009 as an assistant professor (Second Am. Compl. at ¶ 9). The University promoted Plaintiff to Associate Professor in 2012, to Interim Director – Education Graduate Programs in 2014, and then to Graduate Program Director in 2019 (*Id.* at ¶¶ 9–10). As Graduate Program Director, Plaintiff was responsible for serving as the Chair of the Dissertation Advisory Committee and ensuring program quality and accreditation standards (*Id.* at ¶ 11).

During the summer of 2023, Plaintiff learned that large portions of a graduate student's proposed dissertation were heavily plagiarized (Ex. 11), but, contrary to University requirements, Plaintiff did not report this plagiarism to her superiors (Ex. 6). Her superiors only became aware of the situation when another faculty member brought the issue to their attention on November 4, 2023 (Ex. 11).

Still later that month, Plaintiff was placed on paid administrative leave pending an investigation of unrelated allegations of official misconduct (Ex. 10). Ultimately, she was cleared to return to work effective December 18, 2023 (*Id*). While Plaintiff was on leave, University officials discovered that she had not been properly maintaining graduate school files on a shared drive accessible to her Department's Chair and other DSU faculty members which caused great difficulty for her department (Ex. 6).

In response to these issues, the University removed Plaintiff from her position as Graduate Program Director on December 18, 2023 (*Id.* at ¶14; Ex. 6). The Removal Memorandum (Ex. 6)

---

[1] Because a Rule 12(b)(6) motion to dismiss is based on the sufficiency of the pleadings themselves, this brief references the Second Amended Complaint and accepts the well-pleaded allegations as true. In addition, this brief references the exhibits Plaintiff attached to her Second Amended Complaint. *See, e.g., Watson v. Dep't of Servs. for Child., Youth & Their Fams. Delaware*, 932 F. Supp. 2d 615, 622 (D. Del. 2013) ("A district court may consider facts alleged in the complaint and its attachments on a motion to dismiss.").

was issued by Dr. Emily Williams ("Dr. Williams"), the University's Vice Provost for Academic Affairs (*Id.*).  In the memorandum, Dr. Williams explained that the University's decision was due to: (1) Plaintiff knowingly allowing a graduate student to sit for a dissertation proposal defense even though large portions of her proposal were demonstrably plagiarized; (2) Plaintiff's failure to report this plagiarism to the Department Chair, Dr. Shelley Rouser ("Dr. Rouser"); and (3) Plaintiff's failure to appreciate the significance of the breach of academic integrity when confronted by Dr. Rouser (Ex. 6).  In addition, Dr. Williams noted that Plaintiff failed to maintain graduate school files in an accessible shared drive and subsequently failed to provide access to all graduate school files when instructed to make them available (*Id.*).

In her Second Amended Complaint, Plaintiff challenges the University's decision to remove her as Graduate Program Director, claiming that none of the reasons given for her dismissal have merit, and, instead, the decision was the result of Dr. Rouser's personal campaign against her (*Id.* at ¶¶ 15–16).  In particular, Plaintiff claims that she was subject to Dr. Rouser's age, race, national origin, and retaliatory animus, and that it was Plaintiff's complaints about Dr. Rouser's conduct which resulted in her removal from her position (*Id.* at ¶ 15).

However, nowhere in her complaint does Plaintiff allege any comments or treatment relating to her age, race, or national origin.  Moreover, the contemporaneous documents attached to her complaint, when Plaintiff was first disputing her dismissal, make no mention of any comments or treatment arising from her status (*Id.*; Exs. 9, 11).

In fact, with regards to the incident of plagiarism, Plaintiff admits that she did not report a student's plagiarism to Dr. Rouser  (Exs. 11, 12).  Plaintiff inaccurately asserts that her role as Graduate Program Director entitled her to discretion in dealing with plagiarism and points to other educational institutions that have different rules than the University (*Id.* at ¶ 23; Exs. 9, 11).

4

Likewise, Plaintiff maintains that although Dr. Rouser instructed her to submit a memo regarding the student's plagiarism in accordance with the University's graduate catalog, she believed that "it was not her responsibility" to do so (Ex. 12). Because Plaintiff failed to adhere to the University's policy regarding the student's plagiarism, Plaintiff was removed from her position as Graduate Program Director (*Id.* at ¶¶ 22–23; Ex. 6). Plaintiff alleges that despite the University's discipline against her, Sonia Sedegui ("Ms. Sedegui"), the student advisor, was later awarded a full-time post-doctoral position, and Dr. Justin Alexander ("Dr. Alexander") continues to serve in his position at the University (*Id.* at ¶ 25; Ex. 12). But it was Plaintiff who was the Graduate Program Director, and the one expected to lead by example.

Following her removal as Graduate Program Director, Plaintiff was returned to her previous position as a fully-tenured professor and was assigned to teach three undergraduate physical education courses in the spring of 2024 (*Id.* at ¶ 26). However, Plaintiff did not teach these courses, instead requesting leave under the FMLA, which was granted on January 18, 2024 (and effective retroactively to January 5, 2024) (*Id.* at ¶ 29; Ex. 15).

During the Spring 2024 semester, Plaintiff alleges that while she was on leave, Dr. Rouser pressured graduate students to remove Plaintiff as Chair of their Dissertation Committees (*Id.* at ¶¶ 27, 30–32). Plaintiff attached these communications to her Second Amended Complaint (Exs. 16, 17). The original email from Dr. Sasso, Associate Professor of Higher Education and Higher Education Programs Coordinator, dated January 26, 2024, notes, "Most of you have been previously informed that Dr. Rathee is on leave which began this semester and continues into this semester. However, she is unfortunately unavailable to serve on dissertations as a chair or a committee member. We will need to make arrangements to find you a new committee member or dissertation chair" (Exs. 16–17). Similarly, a follow up communication from Dr. Tina L. Mitchell,

noted, "Dr. Rathee is currently unavailable to work in the capacity of chair or committee member on your projects. We are committed to seeing you all through this process. Dr. Sasso will work with all students currently enrolled in the program to assign you a new chair for your project" (Ex. 16). Although Plaintiff now claims that these actions were part of some sort of campaign against her, the fact remains that Plaintiff was on leave during this time, and, accordingly, other University personnel needed to take on Plaintiff's responsibilities while she was on leave.

Following her removal as Graduate Program Director and while she was on leave, Plaintiff also alleges that Dr. Rouser appointed a new Graduate Program Director and publicly announced the appointment on social media without acknowledging Plaintiff's tenure as Director and previous contributions to the University (*Id.* at ¶¶ 28, 34). Plaintiff's claims, however, are contradicted by an exhibit to her Second Amended Complaint. The attached email states (with emphasis in the original email): "*We are thankful for Dr. Rathee's service over so many years*" (Ex. 14).

Sometime on or before August 22, 2024, Plaintiff learned that she was assigned three undergraduate physical education classes to teach for the fall 2024 semester. By email dated August 22, she emailed Interim Dean Adenike Marie Davidson about her proposed teaching assignments.[2] By letter dated August 27, the Interim Dean responded with a very detailed letter setting forth the University's decision making process and noting, among other things, that physical education classes were "your area of instruction upon hire" (Ex. 19).

It was also that same August 22 communication in which Plaintiff sought additional leave under the FMLA (only two days before classes were set to begin) and sought permission for remote teaching (*Id.*). The University quickly obtained an adjunct professor to teach the three classes

---

[2] Plaintiff did not attach her August 22 email to her complaint, but it is referenced in the University's August 27 response letter (which was attached as Exhibit 19 to the complaint).

6

which would not be covered if leave were granted (*Id.*).  In her August 27 letter, the Interim Dean also explained that physical education classes were not subject to remote teaching (*Id.*).  However, the August 27 letter also proposed a "gradual reintegration into graduate instruction" (*Id.*).  On August 30, Plaintiff emailed that she did "not accept the conditions" of the August 27 letter regarding reintegration and instead would teach a full load of education graduate courses (Ex. 20).[3] In response, by letter dated September 4, the University informed Plaintiff that if she did not accept the conditions in the August 27 letter, she would be terminated for cause (*Id.*).  Having received no response or communication of any kind from Plaintiff to its September 4 letter, on September 25, the University wrote Plaintiff and indicated its intent to discharge her, but invited her to discuss the letter within the next ten working days (Ex. 21).  Plaintiff never responded or otherwise followed up with the University, and, by letter dated October 29, 2024, the University terminated Plaintiff's employment.[4]

---

[3]  Plaintiff did not attach her August 30 email to her complaint, but it is referenced in the University's September 4 response (which is attached as Exhibit 20 to the complaint).

[4]  In the Second Amended Complaint, Plaintiff observes that although dated October 29, the letter, and an email attaching the letter, were not sent until October 31, 2024, which was the date of Diwali, the most significant festival in Indian culture (Second Am. Compl. at ¶¶ 52–53).  The hardcopy of the letter was not received by Plaintiff until the next day (*Id.*).  With all due respect, the sending of the notice of termination occurred after the decision to terminate had been made, which decision was made only because Plaintiff never responded to the September 4 or September 25 letters from the University.

## **ARGUMENT**

Defendant seeks dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to plead sufficient facts to support any of her three claims. While Plaintiff's Second Amended Complaint is quite lengthy, and attaches some 24 exhibits, Plaintiff failed (and indeed is unable) to tie any of the "facts" she has alleged (many of which are merely conclusory statements) to the laws she claims were violated. Indeed, her Second Amended Complaint is, primarily, a defense of her handling of the plagiarism issue and complaints about how the University has allegedly slighted her. She has not pled any facts suggesting discrimination on the basis of age, race, or national origin. Nor has she alleged any facts suggesting retaliation for taking leave under the FMLA. In this regard, it must be remembered that Plaintiff was not terminated due to her inappropriate handling of the plagiarism issue, but merely returned to her position as a fully-tenured professor. Moreover, upon return from leave, she was scheduled to teach three undergraduate classes, the same type of classes to which she had been assigned prior to taking leave in the spring of 2024.[5] Plaintiff was only terminated after failing to accept the conditions set forth in DSU's August 27 letter, and otherwise failing to respond to the University's letters of September 4 and September 25. No doubt that Plaintiff is upset. No doubt that she feels that she has been treated wrongly (although the University would disagree). But the fact that Plaintiff is unhappy with her termination, even coupled with her age, race, and FMLA leave, does not mean that Plaintiff has stated a claim. Accordingly, Plaintiff's Second Amended Complaint should be dismissed.

---

[5] Plaintiff had been scheduled to teach three undergraduate physical education classes in the spring of 2024, before taking leave, so the fact that she was scheduled to teach three undergraduate physical education classes in the fall of 2024 should not have come as a surprise to her. Moreover, as the University noted in its August 27 letter, this was Plaintiff's area of instruction when she was first hired by the University (Ex. 19).

I.      STANDARD OF REVIEW.

In evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  But when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the claim must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  Plaintiff's Second Amended Complaint—which is based almost entirely on conclusory and irrelevant allegations—does not state a plausible claim for relief and should be dismissed in its entirety.

II.     THE COURT SHOULD DISMISS PLAINTIFF'S RACE/NATIONAL ORIGIN DISCRIMINATION CLAIM BECAUSE PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO SUSTAIN A CLAIM UNDER TITLE VII.

Title VII of the Civil Rights Act of 1964 makes it unlawful for any employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin." 42 U.S.C. §2000e–2(a)(1).  Race and national origin discrimination allegations are viewed as "highly analogous" and "can be considered simultaneously." *Apau v. Printpack Inc.,* 722 F.Supp.2d 489, 493 (D. Del. 2010).  To establish a *prima facie* case for race/national origin discrimination under Title VII, the plaintiff must plead facts showing that: (1) she is a member of a protected class; (2)

9

she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Garnett v. Bank of America*, 243 F.Supp.3d 499, 509 (D. Del. 2017). At a minimum, a plaintiff must plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of the necessary elements" of her Title VII prima facie discrimination claim. *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 789 (3d Cir. 2016) (quotation omitted).

Here, Plaintiff's Second Amended Complaint lacks sufficient facts to establish that (1) she was qualified to continue holding the Graduate Program Director position and (2) her demotion was motivated by her race or national origin.

### A. Plaintiff Admits She Downplayed And Did Not Report The Plagiarism – Leaving Her Unqualified To Serve As Director.

Dr. Williams removed Plaintiff from the Graduate Program Director position after Plaintiff failed to report a graduate student's plagiarism and subsequently downplayed the student's plagiarism when confronted by Dr. Rouser (Second Am. Compl. ¶¶ 22–25; Ex. 6). Plaintiff's own exhibits admit this happened (Ex. 12, ¶¶ 1, 12 (wherein Plaintiff's attached timeline confirms she discovered the plagiarism in July 2023 and a member of the dissertation committee finally informed Dr. Rouser in November 2023)). Even after being confronted by Dr. Rouser, her supervisor, Plaintiff admits she continued to refuse to report the graduate student's plagiarism, incorrectly insisting this refusal was within her authority as Graduate Program Director (Ex. 12, ¶¶ 12–13). The University disagreed and took action – as it was entitled to do. As noted at the outset of this brief, nothing is more sacred to a university than academic honesty and integrity.

Dr. Williams' decision articulates the clear reasons she decided to remove Plaintiff from her administrative appointment – Dr. Rathee failed to meet her job duties with respect to a serious plagiarism incident by a student (Ex. 6). Dr. Williams' letter states, "It is unclear whether you

10

understand the importance of academic integrity and what a serious academic breach this would cause for the university if the student graduated, and later significant passages of her dissertation were found to be plagiarized" (*Id.*). Further, Dr. Williams informed Plaintiff that her actions in failing to properly file student records and other graduate records "placed the department in significant jeopardy" (*Id.*). Finally, Dr. Williams observed, "In aggregate, these situations are not suitable for the leadership necessary for the Graduate Program Director within the DSU Department of Education" (*Id.*).

Plaintiff was not performing her job adequately, which resulted in her removal. Her failure to follow University policies and practices rendered her unqualified to hold her position under Title VII. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (employee was "qualified" under Title VII to be rehired after a layoff because the employer acknowledged that his past work performance had been adequate); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 309 (1996) (articulating the "qualified" element as whether the employee "was performing his job at a level that met his employer's legitimate expectations"); *Bellounis v. Middle-E. Broad. Network, Inc.*, 2019 WL 5654307, at *4 (E.D. Va. Oct. 31, 2019) (finding plaintiff did not meet her employer's legitimate expectations in part due to her "failure to follow her employer's rules"). Accordingly, Plaintiff has failed to satisfy this required element.

As to Dr. Rathee's termination, again, she failed to comply with the University's directions. She refused to teach undergraduate classes, and she never even responded to the University's September 4 and September 25 letters (Ex. 22). Her refusal to perform assigned work, and her refusal to even meet with the University to discuss her return from leave and reintegration to teach graduate level courses, is certainly a basis for a termination for cause.

11

**B.**    **Plaintiff Does Not Allege Circumstances Giving Rise To An Inference Of Intentional Discrimination.**

In addition to lacking necessary factual content to satisfy the second element of a Title VII claim, Plaintiff has not alleged facts to support an inference of intentional race or national origin discrimination and, therefore, has not established her *prima facie* case.  Dr. Williams made the ultimate decision to remove Plaintiff from an administrative appointment (Second Am. Compl. ¶15; *see* Ex. 6 at p. 3 ("I am, therefore, removing you from the position of Graduate Program Director[.]")).  Plaintiff's Second Amended Complaint is silent as to Dr. Williams' motivation in making the decision and, instead, makes an unsupported and conclusory statement that "[d]espite the reasons stated in the Removal Memorandum, defendant removed Dr. Rathee as Director of Education Graduate Programs as part of a campaign of discriminatory and harassing actions taken against Dr. Rathee . . . by Dr. Shelley Rouser" (*Id.* at ¶ 15).  Yet Plaintiff has not pled any facts to support the theory that Dr. Williams did not independently reach her decision, based on her own investigation, to return Rathee to Rathee's previous position as a fully-tenured professor.  *See Durst v. City of Philadelphia*, 798 F.App'x 710, 714 (3d Cir. 2020) (rejecting the application of a cat's paw theory of liability where a supervisor forwarded emails evidencing the plaintiff's violations to the decisionmaker).  Accordingly, Plaintiff has failed to establish that Dr. Williams' decision was motivated by discriminatory animus.

Plaintiff attempts to establish an inference of discrimination by suggesting she was treated differently than other employees.  Such attempt fails, though, as the employees she points to are not similarly-situated to her.  "To make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that she and the employee are similarly situated in all relevant aspects." *Houston v. Easton Area Sch. Dist.*, 355 F.App'x. 651, 654 (3d Cir. 2009); *see Kahan v. Slippery Rock Univ. of*

12

*Pennsylvania*, 50 F.Supp.3d 667, 689 (W.D. Pa. 2014), *aff'd*, 664 F.App'x 170 (3d Cir. 2016) (explaining that comparators must be alike in all relevant aspects for purposes of Title VII discrimination claims); *see also Garnett*, 243 F. Supp. 3d at 510 (stating that the plaintiff "must show that she and the comparator employee(s) are similarly situated in all relevant aspects"). Plaintiff suggests that Ms. Sedegui and Dr. Alexander, who had also been members of the dissertation committee, are comparators. They are not. Neither was the Graduate Program Director. Neither had those responsibilities. Indeed, Plaintiff fails to plead any facts to show that Ms. Sedegui and Dr. Alexander were similarly-situated to her – there are no facts to support that they had the same reporting structure as Plaintiff, worked in the same department as Plaintiff, served in a supervisory role like Plaintiff, and had the same job duties and responsibilities as Plaintiff. Absent such facts, Plaintiff has failed to allege circumstances giving rise to an inference of intentional discrimination, and Plaintiff's discrimination claim must fail.

## III.    PLAINTIFF'S AGE DISCRIMINATION CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO SUSTAIN A CLAIM UNDER THE ADEA.

Plaintiff's age discrimination claim fails for the same reasons as her race/national origin claim. To state an age discrimination claim, Plaintiff must allege sufficient facts to show: (1) she is at least forty years old; (2) she suffered an adverse employment decision; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was "sufficiently younger" so as to support an inference of a discriminatory motive. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Causation is critical; a plaintiff cannot simply plead she was replaced by a younger employee. *See White v. FedEx Corp.,* 2019 WL 5102168, at *3 (M.D. Pa. Oct. 11, 2019) ("Regarding Plaintiff's assertion that he was replaced by a substantially younger person, courts presented with similarly bare allegations have found them insufficient to state a claim under the ADEA"). As explained in Section II.A regarding her

13

race/national original claim, Plaintiff has failed to plead facts to establish that she was qualified to continue holding the Graduate Program Director position after she failed to follow University policies with respect to plagiarism, nor has she pled sufficient facts to establish that she was entitled to continue in her position as a professor because she refused to teach assigned classes and refused to even meet and discuss a reintegration plan with the University following her leave. Even if Plaintiff could establish that she is qualified, Plaintiff's ADEA claim also fails because the Second Amended Complaint is completely silent as to the age of her replacement and offers no "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  Such silence is fatal to Plaintiff's ADEA claim and therefore, Plaintiff's claim must be dismissed.

**IV.    PLAINTIFF'S FMLA CLAIM MUST BE DISMISSED AS PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO INFER RETALIATION.**

As with her other claims, the allegations with respect to Plaintiff's FMLA retaliation claim are threadbare to non-existent; and, she again fails to offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  To meet her burden, Plaintiff must allege facts to establish that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294 (3d Cir. 2012).  "An adverse employment action is an action that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014) (quotations omitted).  On the issue of alleged retaliation, Dr. Rathee's allegations are woefully inadequate.

As to the classes she was assigned to teach (undergraduate physical education classes), Plaintiff was first assigned to teach such classes in the spring of 2024, before she requested and was granted FMLA leave. Her assignment to three such classes in the fall of 2024, when she was scheduled to return from leave, can hardly be considered retaliatory when she been assigned to teach such classes before taking leave. Put another way, the proposed fall 2024 teaching schedule was the same as the proposed spring 2024 teaching schedule. There can be no retaliation for taking leave when the proposed schedule was the same before and after the FMLA protected leave.

As to her termination, it occurred only after Plaintiff refused to teach the undergraduate classes to which she was assigned (Second Amended Compl. at ¶ 47 ("On August 30, 2024, Dr. Rathee informed Dr. Davidson by email that she would not accept the compromise Dr. Davidson sought to impose on her, but that she was available to teach a full load of Education Graduate courses")). Even after Plaintiff's August 30 email, though, by letters dated September 4 and 25, the University sought to meet with Plaintiff and discuss the situation with her (Exs. 20, 21). She never responded, and so the University, faced with an insubordinate employee who refused assigned duties – and refused to even meet to discuss the situation – took the action to terminate Plaintiff (Ex. 22). She has alleged no facts to suggest that the decision to terminate her employment was in retaliation for taking FMLA leave and so this claim, like her other claims about racial and age discrimination, also fails. [6]

---

[6] In a few instances in her Second Amended Complaint (¶¶ 35–36, 44, 49–50, and 54–55), Plaintiff also seems to claim retaliation for bringing her Title VII and ADEA claims, but these allegations are nothing more than conclusory statements. *See, e.g.,* Second Am. Compl. ¶ 54 ("Defendant's actions described above constitute discrimination, harassment, and retaliation against Dr. Rathee because of her race, national origin, and age"); *see also* Second Am. Compl. ¶ 55 ("By reason of defendant's discrimination, harassment, and retaliation, Dr. Rathee suffered extreme harm…").

Such conclusory statements are insufficient to state a claim for retaliation, and leaves the University unable to discern what actions Plaintiff might believe are retaliatory or why. Indeed, Dr. Rathee was removed as graduate program director *before* she brought any of her claims or took

15

## CONCLUSION

It was not race.  It was not age.  It was not taking FMLA leave.  It was Plaintiff's (i) failure to act properly with respect to plagiarism and (ii) refusal to teach assigned classes and to meet with University officials regarding her teaching assignment.  While Dr. Rathee may be disappointed in the University's actions, she has no one to blame but herself.  For all the foregoing reasons, the University respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint in its entirety.

Date: December 3, 2024                                    Respectfully submitted,

**SAUL EWING LLP**

/s/ Jennifer M. Becnel-Guzzo
James D. Taylor, Jr., Esquire (#4009)
Marisa R. De Feo, Esquire (#6778)
Jennifer M. Becnel-Guzzo, Esquire (#4492)
1201 N. Market Street, Suite 2300
Wilmington, DE  19899
(302) 421-6800
james.taylor@saul.com
marisa.defeo@saul.com
jennifer.becnel-guzzo@saul.com

*Counsel for Defendant Delaware State University*

---

leave.  And, she was assigned undergraduate courses to teach in the spring, *before* she brought any claims or took leave.  Thus, the University's actions in assigning her undergraduate classes for the fall semester were consistent with its prior actions in the spring and cannot be retaliatory.  Finally, as the Second Amended Complaint itself makes clear, Dr. Rathee was only terminated after she failed to meet with University officials to plan a path forward on her return from leave.

As Plaintiff has alleged no facts to establish that "the desire to retaliate was the but-for cause of the challenged employment action," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013), any attempt to assert a retaliation claim with respect to racial or age discrimination should be rejected for the same reasons that the FMLA retaliation claim fails.

16