**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NIRMALJIT K. RATHEE, M.A., PH. D., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 24-777 TMH |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS**

**SAUL EWING LLP**
James D. Taylor, Jr., Esquire (#4009)
Marisa R. De Feo, Esquire (#6778)
Jennifer M. Becnel-Guzzo, Esquire (#4492)
1201 N. Market Street, Suite 2300
Wilmington, DE  19899
(302) 421-6800
james.taylor@saul.com
marisa.defeo@saul.com
jennifer.becnel-guzzo@saul.com

*Counsel for Defendant Delaware State
University*

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

    I.    PLAINTIFF'S TITLE VII RACE/NATIONAL ORIGIN DISCRIMINATION CLAIM FAILS ............................................................................................................ 2

        A.    Plaintiff has not alleged facts demonstrating she was qualified to maintain her position at the University. ...................................................................................... 2

        B.    Plaintiff has not alleged facts giving rise to an inference of discrimination............... 4

    II.    PLAINTIFF'S AGE DISCRIMINATION CLAIM FAILS ............................................. 5

    III.    PLAINTIFF'S FMLA CLAIM FAILS............................................................... 7

        A.    Plaintiff's FMLA retaliation claim must be dismissed because she has failed to allege facts sufficient to infer a causal connection between her termination and her leave.......... 7

        B.    Plaintiff did not plead a FMLA interference claim in her second amended complaint and there could be no interference anyway since she was granted FMLA leave. .............. 9

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................1

*Bellounis v. Middle-E. Broad. Network, Inc.*,
    2019 WL 5654307 (E.D. Va. Oct. 31, 2019)............................................................................3

*Bush v. Donahoe*,
    964 F. Supp. 2d 401 (W.D. Pa. 2013).....................................................................................6

*Cauler v. Lehigh Valley Hosp., Inc.*,
    654 F. App'x 69 (3d Cir. 2016) ...............................................................................................6

*Drummer v. Trustees of Univ. of Pennsylvania*,
    286 F. Supp. 3d 674 (E.D. Pa. 2017) .....................................................................................6

*Garnett v. Bank of America*,
    243 F.Supp.3d 499 (D. Del. 2017)..........................................................................................2

*Houston v. Easton Area Sch. Dist.*,
    355 F.App'x. 651 (3d Cir. 2009) .............................................................................................4

*Kahan v. Slippery Rock Univ. of Pennsylvania*,
    50 F.Supp.3d 667 (W.D. Pa. 2014), *aff'd*, 664 F.App'x 170 (3d Cir. 2016) ...........................4

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
    2012 WL 3140350 (3d Cir. Aug. 3, 2012)...............................................................................7

*Mahler v. Cmty. Coll. of Beaver Cnty.*,
    43 F. Supp. 3d 495 (W.D. Pa. 2014).......................................................................................7

*Meiri v. Dacon*,
    759 F.2d 989 (2d Cir. 1985)....................................................................................................3

*O'Connor v. Consol. Coin Caterers Corp.*,
    517 U.S. 308 (1996).................................................................................................................3

*Ross v. Gilhuly*,
    755 F.3d 185 (3d Cir. 2014)................................................................................................7, 9

*Sarullo v. U.S. Postal Serv.*,
    352 F.3d 789 (3d Cir. 2003)....................................................................................................4

*Stovall v. Grazioli*,
  2023 WL 3116439 (3d Cir. Apr. 27, 2023) ...............................................................5

*Swanger-Metcalfe v. Bowhead Integrated Support Servs., LLC*,
  2019 WL 1493342 (M.D. Pa. Mar. 31, 2019)............................................................5

*Tolliver v. Trinity Par. Found.*,
  2017 WL 3288119 (D. Del. Aug. 2, 2017) ................................................................4

*Watson v. Dep't of Servs. for Child., Youth & Their Fams. Delaware*,
  932 F. Supp. 2d 615 (D. Del. 2013)..........................................................................1

*White v. FedEx Corp.*,
  2019 WL 5102168 (M.D. Pa. Oct. 11, 2019) ...........................................................6

*Wilcher v. Postmaster Gen.*,
  441 F. App'x 879 (3d Cir. 2011) ..............................................................................4

*Willis v. UPMC Children's Hosp. of Pittsburgh*,
  808 F.3d 638 (3d Cir. 2015)......................................................................................6

**Statutes**

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 ...........................................6, 7

Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ..................................7, 8, 9, 10

**INTRODUCTION**

What Delaware State University said to Plaintiff in December of 2023 appears to be equally true today: "It is unclear whether you understand the importance of academic integrity and what a serious academic breach this would cause for the university . . . ." *See* Removal Memorandum (Ex. 6 to Second Amended Complaint, D.I. 17).[1]  As evidenced by Plaintiff's original Complaint (D.I. 1), First Amended Complaint (D.I. 10), Second Amended Complaint (D.I. 17), and Answering Brief  (D.I. 23), she still refuses to acknowledge that it was her own actions which led first to her reassignment from Graduate Program Director to fully-tenured professor (for failure to report plagiarism and maintain files) and then her termination (for refusal to teach assigned classes and failure to meet with University officials).  Rather than accept responsibility, Plaintiff alleges (wrongfully) that her return to a fully-tenured professorship, and then her termination, are the results of discrimination and retaliation by the University and not the result of *her own actions*.

In her Answering Brief, Plaintiff ignores or otherwise fails to respond to the case law and arguments in DSU's[2] Opening Brief (D.I. 19), and instead claims that the sparse, conclusory allegations of her Second Amended Complaint are enough.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Because Plaintiff's allegations fail to create reasonable inferences of discrimination or retaliation, all three claims should be dismissed with prejudice.

---

[1]  This brief references the exhibits Plaintiff attached to her Second Amended Complaint and those exhibits are properly considered here.  *See, e.g., Watson v. Dep't of Servs. for Child., Youth & Their Fams. Delaware*, 932 F. Supp. 2d 615, 622 (D. Del. 2013) ("A district court may consider facts alleged in the complaint and its attachments on a motion to dismiss").

[2]  Terms not defined herein have the meaning ascribed to them in Defendant's Opening Brief in support of its Motion to Dismiss (D.I. 19) (the "Opening Brief," cited herein as "Op. Br.").

## ARGUMENT

### I.  PLAINTIFF'S TITLE VII RACE/NATIONAL ORIGIN DISCRIMINATION CLAIM FAILS

Of the four elements required to plead a claim of race/national origin discrimination,[3] Plaintiff has not sufficiently pled facts showing that she was qualified to continue holding the Graduate Program Director position, nor has she alleged any facts suggesting that her removal as director and reassignment to a fully-tenured faculty position was motivated by her race or national origin.  Similarly, she has not alleged any facts suggesting that her termination, for refusal to teach assigned classes and refusal to meet with University officials, was so motivated.  The absence of either requires dismissal.

#### A.  Plaintiff has not alleged facts demonstrating she was qualified to maintain her position at the University.

As discussed in the Opening Brief, while acting as Graduate Program Director, Plaintiff failed to report an incident of plagiarism and failed to properly maintain student and graduate records.  Her actions (and inactions) not only jeopardized the University's academic integrity but, as Dr. Williams explained in the Removal Memorandum, "placed the department in significant jeopardy with the continuity of [its] day-to-day" operations, thus resulting in her removal.

In her Answering Brief, Plaintiff responds that her bare allegations in the Second Amended Complaint "sufficiently establish that [she] was qualified as Graduate Program Director." Ans.Br. at 4.  But, exactly, what allegations, is she referring to?  The Removal Memorandum (which Dr. Rathee herself attached to her pleadings) clearly states that Plaintiff's failure to report the student's

---

[3] To establish a *prima facie* case for race/national origin discrimination under Title VII, the plaintiff must plead facts showing that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Garnett v. Bank of America*, 243 F.Supp.3d 499, 509 (D. Del. 2017).

plagiarism ran afoul of her responsibilities as Graduate Program Director and, therefore, rendered her unqualified to hold her position. That same memorandum further points out that Dr. Rathee's failure to properly maintain graduate files "placed the department in significant jeopardy." Either reason justified Plaintiff's removal from her leadership position as Graduate Program Director and return to a fully-tenured professor position.[4]

Plaintiff claims that her "factual allegations refuting the Removal [Memorandum] must be taken as true," Ans.Br. at 4, and then references paragraphs 15–25 of her Second Amended Complaint; but, nowhere in her brief or her Second Amended Complaint does she claim that she properly maintained records, nor does she dispute that she failed to report the plagiarism, as she was required to do under DSU procedures. Ironically, in exhibit 12 to her Second Amended Complaint (a memo Plaintiff prepared), she states in part: "[the student] plagiarized a significant amount of literature from other articles, copying and pasting it verbatim without any references or appropriate citations." The memo further states that "I received an email from Dr. Rouser stating that one of [student's] committee members (Dr. Kornel Brown) had brought [student's] plagiarism issues to her attention." Nowhere in this memo does Plaintiff claim or indicate that she reported the plagiarism to Dr. Rouser, as she was required to do.

Similarly, with respect to her failure to properly maintain files, the Plaintiff alleges: "Dr. Rouser was fully aware that there was no secretarial support for the Education Graduate Programs for approximately one year; it was highly improper to expect Dr. Rathee to perform the tasks of a

---

[4] *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 309 (1996) (articulating the "qualified" element as whether the employee "was performing his job at a level that met his employer's legitimate expectations"); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (internal citations omitted) (noting that in a Title VII case, "the ultimate inquiry is whether an employee's performance meets his employer's legitimate expectations"); *Bellounis v. Middle-E. Broad. Network, Inc.*, 2019 WL 5654307, at *4 (E.D. Va. Oct. 31, 2019) (finding plaintiff did not meet her employer's legitimate expectations in part due to her "failure to follow her employer's rules").

secretary as well" (Second Am. Compl. at ¶ 33).  If anything, this statement suggests Plaintiff knew she wasn't properly maintaining the files, but blames lack of secretarial support.

In sum, Plaintiff has failed to refute the reasons for her reassignment from Graduate Program Director back to fully-tenured professor, and has made no attempt to justify or explain her refusal to teach undergraduate classes or even meet with University personnel to discuss the teaching issue.  In short, Plaintiff has not pled facts sufficient to show she was qualified.

### B.    Plaintiff has not alleged facts giving rise to an inference of discrimination.

In addition to failing to show she was qualified to continue as Graduate Program Director, or qualified to continue as an employee once she refused to teach assigned classes, Plaintiff's claim also fails because she has not alleged facts to support an inference of intentional discrimination. There are no claims of racial remarks.  No claims of racial insensitivity.  No claims of any overt racial discrimination.  Accordingly, the only other way to support such an inference is to show that a defendant is treating others similarly-situated, but outside Plaintiff's protected class, differently.[5] And this Dr. Rathee has not done.

Here, Plaintiff has not identified any similarly-situated University employee outside her protected class who was treated more favorably by DSU.  As Defendant explained in its Opening

---

[5]  *See, e.g., Sarullo v. U.S. Postal Serv.*, 352 F.3d 789 (3d Cir. 2003) (internal citations omitted) ("The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race . . . or national origin.").  "To make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that she and the employee are similarly situated in all relevant aspects."  *Houston v. Easton Area Sch. Dist.*, 355 F.App'x. 651, 654 (3d Cir. 2009); *see Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F.Supp.3d 667, 689 (W.D. Pa. 2014), *aff'd*, 664 F.App'x 170 (3d Cir. 2016) (explaining that comparators must be alike in all relevant aspects for purposes of Title VII discrimination claims); *Tolliver v. Trinity Par. Found.*, 2017 WL 3288119, at *8 (D. Del. Aug. 2, 2017) (dismissing Title VII discrimination claim, in part, because alleged comparator was not alike in all relevant respects).  A "determination of whether employees are similarly situated takes into account factors such as the employee's job responsibilities, the [relevant] supervisors and decision-makers, and the nature of the misconduct engaged in."  *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011).

Brief, Plaintiff's attempt to suggest that University employees Sonia Sedegui and Dr. Justin Alexander are comparators fails because Plaintiff did not plead any facts to show she was similarly-situated to these personnel. Dr. Rathee was the Graduate Program Director. She, and she alone, had the responsibilities that came with that position. They did not. Sedegui and Dr. Alexander are not comparable.

In response, Plaintiff argues that Defendant's "contention that the employees referred to by Dr. Rathee relating to her removal as Graduate Program Director are not her comparators must be rejected" because "[whether] those employees are comparators is a question of fact which cannot be determined at the pleadings stage." Ans.Br. at 4. But Plaintiff is wrong. In order to avoid dismissal, Dr. Rathee must allege facts sufficient to make plausible the existence of similarly situated parties that are like her in all relevant aspects.[6] Put another way, it is not enough to simply allege someone is a comparator (and then hope to back up that claim through discovery); rather, a plaintiff must identify "relevant comparators" and "similarly situated individuals" as part of their complaint. Here, the facts set forth in the Second Amended Complaint demonstrate that neither Sedegui nor Dr. Alexander are comparators, and in the absence of any comparators, Plaintiff has failed to plead a required element of a Title VII claim for race/national origin discrimination.

## II.   PLAINTIFF'S AGE DISCRIMINATION CLAIM FAILS

Like her race/national origin discrimination claim, Plaintiff's age discrimination claim also

---

[6] *See, e.g.*, *Stovall v. Grazioli*, 2023 WL 3116439, at *2 (3d Cir. Apr. 27, 2023) (affirming dismissal of Title VII claim "where [plaintiff] alleged that her [s]upervisors treated her differently than other employers, she either failed to identify relevant comparators, failed to allege differential treatment for the same conduct, or failed to show that her treatment was less favorable than that of other employees."); *Swanger-Metcalfe v. Bowhead Integrated Support Servs., LLC*, 2019 WL 1493342, at *8 (M.D. Pa. Mar. 31, 2019) ("a plaintiff's failure to identify similarly situated individuals outside of the plaintiff's class who were treated more favorably is grounds for dismissal").

fails to satisfactorily plead 2 of the 4 required elements.[7]  One of the four elements that a plaintiff must plead is that they are qualified.  For the reasons set forth above and in the University's Opening Brief, the Plaintiff here was not qualified.  She did not report the plagiarism.  She did not keep the required records in an accessible place.

The fourth element of an age discrimination claim is that the plaintiff must have been replaced by a person "sufficiently younger" so as to support an inference of a discriminatory motive.  But, here, Dr. Rathee says nothing about the age of the new Graduate Program Director anywhere in her Second Amended Complaint.  In her defense, she writes that:

> It is sufficient that Dr. Rathee has pleaded that she is over the age of 40 and that her replacement was younger than her.  Discovery will reveal the exact age of her replacement, information which is in defendant's possession.

Ans.Br. at 5.  But this "defense" misses the point.  A claim for age discrimination does not survive to the discovery stage without an allegation that the plaintiff was replaced by a person "sufficiently younger" to infer age discrimination.  And, here, Dr. Rathee has not made the necessary allegation. Even if she had, though, age alone would not allow her claim to proceed.  Causation is critical; a plaintiff cannot simply plead she was replaced by a younger employee.[8]  Here, where Plaintiff has

---

[7]  The *prima facie* case for an age discrimination claim under the ADEA requires the plaintiff show: (1) she is at least forty years old; (2) she suffered an adverse employment decision; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was "sufficiently younger" so as to support an inference of a discriminatory motive.  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).  To satisfy the fourth element of an ADEA claim, a plaintiff "must show that similarly situated younger employees were treated more favorably than she."  *Bush v. Donahoe*, 964 F. Supp. 2d 401, 412 (W.D. Pa. 2013). It is well-established that a plaintiff's bare allegations that she was replaced by a substantially younger person does not raise the claim "above the level of mere speculation" and is subject to dismissal.  *See Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017); *see also Cauler v. Lehigh Valley Hosp., Inc.*, 654 F. App'x 69, 72 (3d Cir. 2016) (affirming the district court's determination that plaintiff's allegation in the complaint that a substantially younger person was hired did not give rise to an inference of discrimination).

[8]  *See White v. FedEx Corp.*, 2019 WL 5102168, at *3 (M.D. Pa. Oct. 11, 2019) ("Regarding Plaintiff's assertion that he was replaced by a substantially younger person, courts presented with

made no attempt to plead the age of her replacement, her claim should be dismissed.  But, even including such age in her pleadings would still not be enough because she has pled no facts – none – to suggest age was in any way a motivating factor for her reassignment or termination.

## III.    PLAINTIFF'S FMLA CLAIM FAILS

Plaintiff incorrectly argues that her Second Amended Complaint states a retaliation *and interference* claim under the FMLA.  Ans. Br. at 5–6.[9]  Although Plaintiff attempted to plead a FMLA retaliation claim in her Second Amended Complaint, she did not allege any facts to support a claim for FMLA interference.  *See* Second Am. Compl ¶¶ 7, 54, 67.  Regardless, though, both claims fail.

### A.    Plaintiff's FMLA retaliation claim must be dismissed because she has failed to allege facts sufficient to infer a causal connection between her termination and her leave.

Timing matters.  In its Opening Brief, the University pointed out that Dr. Rathee took FMLA leave in the spring of 2024 (*after* she was reassigned from Graduate Program Director to fully-tenured professor), returned to the University for teaching in August, refused to teach the undergraduate classes assigned, and, then, failed to meet with University officials to discuss her teaching load and courses to teach.  It was only after Dr. Rathee failed to meet with University officials that she was terminated.  Plaintiff has failed to make any allegations suggesting her

---

similarly bare allegations have found them insufficient to state a claim under the ADEA"); *Mahler v. Cmty. Coll. of Beaver Cnty.*, 43 F. Supp. 3d 495, 507 (W.D. Pa. 2014) ("a plaintiff alleging age discrimination [must] first establish a *prima facie* case of discrimination.").

[9]  To prevail on a retaliation claim under the FMLA, Plaintiff must demonstrate three elements: (1) invocation of an FMLA right; (2) termination; and (3) causation.  *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 2012 WL 3140350, at *6 (3d Cir. Aug. 3, 2012). To state a claim for interference under the FMLA, Plaintiff must show that: (1) she was an eligible employee under the FMLA; (2) the University was an employer subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave notice to the University of her intention to take FMLA leave; and (5) she was denied benefits to which she was entitled under the FMLA.  *See Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).

termination arose from her FMLA leave.

In her Answering Brief, Plaintiff claims that "the issue of whether the allegations of the [Second Amended Complaint] establish causation cannot be decided on a motion to dismiss" and "[w]hether the third element of causation can be proven is an issue of fact that can only be decided after discovery has been taken." Ans.Br. at 6. But, again, what allegations? In paragraph 67, Plaintiff merely states: "Defendant's conduct described above constitutes retaliation against Dr. Rathee for exercising her rights under the FMLA." What conduct? Dr. Rathee does not dispute that she requested and was granted FMLA leave. She makes no allegations that she was criticized for taking FMLA leave. She was ultimately terminated because she refused to teach assigned classes in the fall of 2024, and, even then, she was offered chances to meet and discuss the matter with University officials, but never did so. Significantly, in her Second Amended Complaint, Dr. Rathee does not dispute that she refused to teach the undergraduate classes assigned for the fall 2024 semester. She does not dispute that she failed to attend the meetings to discuss her teaching load. She does not dispute the truth of the University's October 29, 2024 letter terminating her (Ex. 22 to Second Am. Compl.), which states in part:

> Although the fall 2024 semester began on August 26, 2024, to date you have failed to perform your professional responsibilities as a member of the faculty and have had several unexcused absences without notice to the University. You rejected the terms of your return to work offered in a letter, dated August 27, 2024, and your request for remote work and teaching accommodations were found to be unsubstantiated. On September 25, 2024, you were issued a notice of intent to discharge for cause . . . As such, you were invited to schedule an interview within ten (10) working days to discuss the University's intent to discharge. To date, we have not received a response. Accordingly, I have no other choice but to terminate your employment . . .

As this letter makes clear, Dr. Rathee was terminated only when she failed to respond to the University's September 25 letter and arrange to meet with University officials.

As to any claim for FMLA retaliation, Plaintiff's Second Amended Complaint is devoid of any allegations to support a claim for retaliation. She took her leave. She returned. Only when she refused to teach the assigned classes (the same classes assigned the previous semester before she took leave) and failed to communicate with University officials was she terminated.

**B.     Plaintiff did not plead a FMLA interference claim in her second amended complaint and there could be no interference anyway since she was granted FMLA leave.**

Plaintiff incorrectly argues that her Second Amended Complaint states an interference claim under the FMLA because "[e]mployer actions taken against an employee related to their FMLA rights can constitute retaliation and/or interference." *See* Ans. Br. at 5–6. While this may be a true statement of the law, it does not mean that Plaintiff has sufficiently pled an interference claim. Indeed, a careful reading of Count III of her Second Amended Complaint indicates she did not. The word "interference" appears only in paragraph 66 of the Second Amended Complaint, which reads: "Dr. Rathee had a federal statutory right under the FMLA to exercise her rights thereunder without interference or retaliation." Presumably this is intended as a statement of the law, because the next paragraph (67) then states: "Defendant's conduct described above *constituted retaliation* against Dr. Rathee for exercising her rights under the FMLA and thereby deprived her of the rights, privileges, and immunities guaranteed to her under the FMLA" (emphasis added). Critically, there is no mention of FMLA *interference* in paragraph 67 or anywhere else in the Second Amended Complaint. Thus, the suggestion that Plaintiff pled such a claim is simply incorrect.

However, even if Plaintiff had so pled, such a claim must still fail. As noted above, an element of a FMLA *interference* claim is that the plaintiff was denied benefits under the FMLA to which the plaintiff was entitled. *See Ross*, 755 F.3d at 191–92. And nowhere has Plaintiff alleged such denial – because, of course, no such denial occurred.

**CONCLUSION**

It was not race, national origin, age or FMLA leave.  It was Plaintiff's (i) failure to act properly with respect to plagiarism and maintain proper files, and (ii) refusal to teach assigned classes and meet with University officials regarding her teaching assignments that led first to her reassignment and then termination.  While Dr. Rathee may be disappointed in the University's decisions, it was her deliberate actions that led to this outcome.  She did not report the plagiarism, failed to properly maintain files, refused to teach undergraduate classes, and failed to respond to requests from University officials to meet and discuss her teaching assignments.  Dr. Rathee's Second Amended Complaint falls far short of any reasonable inferences of race, national origin, age, or FMLA discrimination or retaliation.  She was reassigned and then terminated because of her own actions.

For all the foregoing reasons, the University respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint in its entirety with prejudice.

Date: January 22, 2025                                              Respectfully submitted,


                                                                  **SAUL EWING LLP**

                                                                  /s/ Jennifer M. Becnel-Guzzo
                                                                  James D. Taylor, Jr., Esquire (#4009)
                                                                  Marisa R. De Feo, Esquire (#6778)
                                                                  Jennifer M. Becnel-Guzzo, Esquire (#4492)
                                                                  1201 N. Market Street, Suite 2300
                                                                  Wilmington, DE  19899
                                                                  (302) 421-6800
                                                                  james.taylor@saul.com
                                                                  marisa.defeo@saul.com
                                                                  jennifer.becnel-guzzo@saul.com

                                                                  *Counsel for Defendant Delaware State University*

- 10 -