**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NIRMALJIT K. RATHEE, M.A., PH.D.　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　v.　　　　　　　　　　　　)　　C.A. No. 1:24-CV-00777-TMH
　　　　　　　　　　　　　　　　　　　　)
DELAWARE STATE UNIVERSITY,　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

<u>**MEMORANDUM OPINION**</u>

Ronald George Poliquin, THE POLIQUIN FIRM LLC, Dover, Delaware — Attorney for Plaintiff.


James Darlington Taylor, Jr., Jennifer M. Becnel-Guzzo, SAUL EWING LLP, Wilmington, Delaware — Attorneys for Defendant.


April 16, 2026
Wilmington, DE

1

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before the court is Defendant Delaware State University's motion to dismiss Plaintiff Nirmaljit K. Rathee, M.A., Ph.D.'s Second Amended Complaint with prejudice. Because Plaintiff failed to plead facts sufficient to support her three claims, the court grants Defendant's motion to dismiss Plaintiff's complaint with prejudice.

## I.    BACKGROUND

Plaintiff Nirmaljit K. Rathee is a sixty-year-old Asian woman who began working at Delaware State University (the University) in 2009 as an assistant professor. (D.I. 17 ¶ 9). She was promoted to Associate Professor in 2012, and the University appointed her Interim Director of the Education Graduate Programs for the Department of Education in 2014. (*Id.*). In 2016, the University appointed Plaintiff to Graduate Program Director and Associate Professor for the College of Education, Health, and Public Policy. (*Id.* ¶ 8). The University then appointed Plaintiff to Professor and Director of Education Graduate Programs in the Department of Education in 2019. (*Id.* ¶ 10). Plaintiff continued to teach classes while also serving as Director of Graduate Education Programs. (*Id.* ¶ 11). In parallel to her other responsibilities at the University, Plaintiff also served as the Chair of the Dissertation Advisory Committee and was a member of the Research and Dissertation Advisory Committee. (*Id.*).

In the summer of 2023, Plaintiff was made aware that portions of a graduate student's proposed dissertation were plagiarized. (*See* D.I. 17-2 at 7 (Ex. 11)). It was not until November 4, 2023, when another faculty member brought the issue to the University's attention, that her superiors were informed of the situation. (*See id.*). Later that month, Plaintiff was placed on administrative leave pending an investigation of unrelated allegations of official misconduct, but she was cleared to work effective December 18, 2023. (D.I. 17-2 at 5 (Ex. 10)). While on leave,

University officials discovered that Plaintiff had not been maintaining graduate school files on a shared drive accessible to her Department's Chair and other University faculty. (D.I. 17-1 at 48 (Ex. 6)). As a result, the University removed Plaintiff from her position as Director of Education Graduate Programs on December 18, 2023. (*See* D.I. 17-1 at 46–49 (Ex. 6) (the "Removal Letter")). The Removal Letter (explained that Plaintiff was being removed from this role for (1) knowingly allowing a graduate student to sit for a dissertation proposal defense even though large portions of her proposal were plagiarized, (2) failure to report this plagiarism to the Department Chair, and (3) failure to appreciate the significance of the breach of academic integrity when confronted by the Department Chair. (*Id.* at 47–49).

Following her removal as Director of Education Graduate Programs, Plaintiff was returned to her previous position as a fully tenured professor, (D.I. 17-1 at 49), but she was assigned to teach three undergraduate physical education courses in spring 2024, (D.I. 17 ¶ 26). The University assigned adjunct faculty members to teach the courses Plaintiff usually taught. (D.I. 17 ¶ 26). Instead of teaching the classes she was assigned, Plaintiff requested and was granted leave under the Family and Medical Leave Act (FMLA) in January 2024. (D.I. 17 ¶ 29; D.I.17-2 at 26 (Ex. 15)). Plaintiff was later assigned three undergraduate physical education classes to teach in the fall 2024 semester when she was slated to return from leave. (D.I. 17-3 at 2–3 (Ex. 18)). On August 22, 2024, two days before classes began, Plaintiff requested to teach her fall classes remotely and for additional leave under the FMLA. (*See* D.I. 17-3 at 5–6 (Ex. 19)). The Interim Dean responded on August 27, explaining the University's decision-making process and noting that physical education classes were "[Plaintiff's] area of instruction upon hire," while also proposing a "gradual reintegration into graduate instruction." (*Id.*). The Interim Dean further explained that (1) the Human Resources department did not notify the dean's office that Plaintiff

was seeking FMLA until August 23, (2) Plaintiff's fall classes were not subject to remote teaching, and (3) proposed that Plaintiff co-teach the assigned physical education courses with an adjunct professor that the University assigned under the assumption that Plaintiff was seeking FMLA. (*Id.*). On August 30, Plaintiff responded that she did not accept the conditions regarding re-integration and was only willing to teach a full load of education graduate courses instead. (*See* D.I. 17 ¶ 47; D.I. 17-3 at 8 (Ex. 20)). The Interim Dean responded in a letter on September 4, informing Plaintiff that if she did not accept the conditions by September 6, she would be terminated for cause. (D.I. 17-3 at 8 (Ex. 20)). Plaintiff did not reply. The University wrote to Plaintiff again on September 25, indicating its intent to discharge her and invited her to discuss the letter within ten working days. (D.I. 17-3 at 10–11 (Ex. 21)). Plaintiff never replied to the University. On October 29, 2024, the University terminated Plaintiff's employment. (D.I. 17 ¶ 51; D.I. 17-4 at 2–3 (Ex. 22)).

On November 15, 2024, Plaintiff filed her Second Amended Complaint (Complaint) against the University. (D.I. 17). On December 3, 2024, the University filed a motion to dismiss with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 18).

## II.     LEGAL STANDARD

Defendant moves to dismiss this case for failure to plead facts sufficient to support Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (cleaned up). "A district court may consider facts alleged in the complaint and its attachments on a motion to dismiss." *Watson v. Dep't of Servs. for Child., Youth & Their Fams.*

*Del.*, 932 F. Supp. 2d 615, 622 (D. Del. 2013). When a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the claim must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.   **DISCUSSION**

Defendant argues that Plaintiff's Complaint fails to plead facts sufficient to support her three claims. (D.I. 19).

#### A.   Title VII Race/National Origin Discrimination Claim

"To establish a prima facie case of race discrimination, [Plaintiff] must prove that: (1) she is a member of a protected class; (2) she is qualified for the position at issue; (3) she suffered an adverse action relative to that position; and (4) under circumstances that give rise to an inference of unlawful discrimination." *Garnett v. Bank of Am.*, 243 F. Supp. 3d 499, 509 (D. Del. 2017). Because Defendant only contests factors two and four in its motion to dismiss, (D.I. 19 at 10), the court presumes Plaintiff establishes factors one and three for purposes of its analysis. We address Defendant's arguments below.

##### a.   *Element (2): Whether Plaintiff is qualified for position at issue*

Defendant argues that Plaintiff does not allege facts demonstrating she was qualified to maintain her Director of Education Graduate Programs position. (D.I. 19 at 10–11). And that Plaintiff was removed for failure to meet her job duties with respect to the plagiarism incident and failing to properly file student records electronically. (*Id.*). Defendant cites multiple instances where courts have held that the failure to follow employment policies and practices renders an employee unqualified to hold a position under Title VII. (D.I. 19 at 11; *see, e.g.*, *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996) (articulating the qualified element as whether the employee "was performing his job at a level that met his employer's legitimate

expectations" (cleaned up)); *Bellounis v. Middle-E. Broad. Network, Inc.*, No. 18-cv-885, 2019 WL 5654307, at *4 (E.D. Va. Oct. 31, 2019) (finding plaintiff did not meet her employer's legitimate expectations in part due to her "failure to follow her employer's rules").

Regarding the plagiarism incident, Defendant argues Plaintiff's own exhibits support that she was unqualified to hold her position under Title VII. (D.I. 19 at 10 (citing D.I. 17-2 at 11, 14 (Ex. 12) (Plaintiff's attached timeline confirming she discovered the plagiarism in July 2023, while a member of the dissertation committee finally informed the Interim Dean in November 2023))). Defendant further argues that even after being confronted by her supervisor about the plagiarism incident, Plaintiff admitted that she did not report the graduate student's plagiarism because she believed that her role as Graduate Program Director permitted her to refrain from doing so. (*Id.* at 14). With regards to Plaintiff's termination, Defendant explains that she again failed to comply with the University's directions by refusing to teach undergraduate classes and failing to respond to Defendant's September 4 and September 25 letters. (D.I. 19 at 11 (citing D.I. 17-4 at 2–3 (Ex. 22))).

Plaintiff responds by referencing paragraphs 15–25 of her Complaint, which purport to refute the Removal Letter, to sufficiently establish that she was qualified to serve as Director of Education Graduate Programs. (D.I. 23 at 4 (citing D.I. 17 ¶¶ 15–25)). She also argues that these factual allegations must be taken as true. (D.I. 23 at 4).

In reply, Defendant argues that the same Removal Letter clearly states that Plaintiff's failure to report plagiarism ran afoul of her responsibilities as Director of Education Graduate Programs and that her failure to properly maintain graduate files "'placed the department in significant jeopardy.'" (D.I. 24 at 2–3 (quoting D.I. 17-1 at 48 (Ex. 6))). Defendant further argues that nowhere in her brief or Complaint does Plaintiff plead that she properly maintained records,

nor does she dispute that she violated the University's procedures by failing to report the plagiarism. (D.I. 24 at 3).

Drawing all reasonable inferences in Plaintiff's favor, the Complaint fails to plead facts demonstrating that Plaintiff is qualified to maintain her position as Director of Education Graduate Programs. Plaintiff not only fails to plead facts demonstrating that she properly maintained records, but she also affirmatively offers, via her citation to the Removal Letter, facts demonstrating that she did not report the plagiarism in a timely manner. She does not dispute that she violated the University's procedures by failing to do so. (*See* D.I. 17 ¶ 14 (citing D.I. 17-1 at 47–49 (Ex. 6))). Plaintiff maintains that, although the Interim Dean instructed her to submit a memo regarding the student's plagiarism in accordance with the University's graduate catalog, she believed she was permitted to refrain from doing so. (D.I. 17 ¶ 23 (citing D.I. 17-2 at 14 (Ex. 12))). However, the University's Vice Provost for Academic Affairs noted that Plaintiff's actions "placed the department in significant jeopardy" and are "not suitable for the leadership necessary" for her position. (D.I. 17-2 at 48 (Ex. 6)). She further does not dispute her failure to meet the University's legitimate expectations in refusing to teach undergraduate classes and refusing to respond to communications from University personnel. (*See generally* D.I. 17).

      b. *Element (4): Whether the circumstances give rise to an inference of unlawful discrimination*

Defendant also argues that Plaintiff does not allege facts giving rise to an inference of discrimination. (D.I. 19 at 12–13). Defendant argues that Plaintiff's Complaint is silent as to the Vice Provost of Academic Affairs' motivation in making the removal decision. (D.I. 19 at 12). Instead, Plaintiff makes a conclusory statement that "[d]espite the reasons stated in the Removal [Letter], [D]efendant removed [Plaintiff] as Director of Education Graduate Programs as part of a

7

campaign of discriminatory and harassing actions taken against [Plaintiff] . . . by [the Chair of the University's Education Department]." (D.I. 19 at 12 (quoting D.I. 17 ¶ 15)). Defendant further argues that Plaintiff's only attempt at establishing an inference of discrimination fails because she identifies two faculty members involved with the plagiarism incident, Ms. Sonia Sedegui and Dr. Justin Alexander, who were not punished. (D.I. 19 at 12–13). These faculty members were, however, not similarly situated: despite also having been members of the dissertation committee, they were not the Director of Education Graduate Programs, and Plaintiff pleads no facts to support that they had the same reporting structure, worked in the same department, served in a supervisory role, or had the same job duties and responsibilities as she. (*Id.* (citing *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009))).

Plaintiff responds by stating that the allegations in paragraphs 15–25 and 26–53 of her Complaint with respect to her removal and termination, respectively, "provide ample basis . . . to conclude [that Plaintiff] sufficiently alleged circumstances giving rise to an inference of discrimination." (D.I. 23 at 4). Plaintiff also argues that whether employees are comparators is a factual dispute that cannot be resolved at the pleadings stage. (*Id.*).

In reply, Defendant argues that Plaintiff failed to "allege facts sufficient to make plausible the existence of similarly situated parties that are like her in all relevant aspects." (D.I. 24 at 5). Defendant argues that it is not enough "to allege someone is a comparator" and rely on discovery to back up the claim. (*Id.*). Instead, "[P]laintiff must identify relevant comparators and similarly situated individuals as part of [her] [C]omplaint." (*Id.* (cleaned up)). *See, e.g.*, *Stovall v. Grazioli*, No. 20-cv-2041, 2023 WL 3116439, at *2 (3d Cir. Apr. 27, 2023) (affirming dismissal of Title VII claim "[w]here [plaintiff] alleged that her [s]upervisors treated her differently than other employees," but "she either failed to identify relevant comparators, failed to allege differential

8

treatment for the same conduct, or failed to show that her treatment was less favorable than that of other employees.").

Drawing all reasonable inferences in Plaintiff's favor, the Complaint fails to plead facts that give rise to an inference of unlawful discrimination. Perhaps the closest to a sufficiently pled fact that Plaintiff raises is that the October 29, 2024, termination letter was actually sent on October 31, 2024, which was the date of Diwali, "the most significant festival in Indian culture." (D.I. 17 ¶ 52). However, the court finds that delivery of a termination letter on a religious holiday alone is insufficient to give rise to an inference of unlawful discrimination. And Defendant explains that the termination letter was sent after the University already decided to terminate Plaintiff—a decision that was made, in part, because Plaintiff never responded to Defendant's two September letters that had indicated Defendant's intent to discharge her if she did not accept the terms of the August 27 letter. (D.I. 19 at 7 n.4; *see also* D.I. 17-3 at 5–6 (Ex. 19); D.I. 17-3 at 8 (Ex. 20); D.I. 17-3 at 10–11 (Ex. 21)). Otherwise, Plaintiff's Complaint is silent on the Vice Provost of Academic Affairs' motivation in removing her, and her only attempt at establishing an inference of discrimination fails because she failed to provide characteristics of the allegedly "similarly situated" employees. *See Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702–03 (3d Cir. 2010) (affirming the district court's dismissal of Title VII claims because the plaintiff failed to demonstrate relevant characteristics of the individuals who received promotions that she alleged she was entitled to and failed to plead any non-conclusory factual allegations regarding the rejection of her promotion request). Even so, in this case, identifying "relevant comparators" is less germane since the University contends that Plaintiff breached a responsibility specific to her role as Director of Education Graduate Programs: reporting instances of academic misconduct such as the act of plagiarism. *See Houston*, 355 F. App'x at 654 ("To make a comparison of the

9

plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that [s]he and the employee are similarly situated in all *relevant* respects."). Thus, even if the other employees may be "similarly situated" in some respects—which Plaintiff also failed to demonstrate relevant characteristics to prove—they are not similarly situated comparators in all relevant respects.

Thus, Plaintiff's Title VII discrimination claim cannot withstand the motion to dismiss because Plaintiff fails to adequately plead either that she is qualified for the position at issue or that the circumstances of her termination give rise to an inference of unlawful discrimination.

B.  ADEA Age Discrimination Claim

"The elements of a prima facie case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Child.'s Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

a.  *Element (3): Whether Plaintiff was qualified for position at issue*

Defendant argues that the ADEA claim should fail for the same reason that the Title VII claim fails: Plaintiff does not allege facts demonstrating she was qualified to maintain her Director of Education Graduate Programs position or to continue in her position as a professor. (D.I. 19 at 13–14).

In response, Plaintiff argues that Defendant can obtain information in discovery to establish that Plaintiff was not competent to hold either position. (D.I. 23 at 5). Plaintiff also contends that the facts alleged in the Complaint establish her competency beyond doubt. (*Id.*).

In reply, Defendant reemphasized the reasons set forth in its Opening Brief for why Plaintiff was not qualified: she did not report the plagiarism, and she did not keep the required records in an accessible place. (D.I. 24 at 5–6).

Drawing all reasonable inferences in Plaintiff's favor, the Complaint fails to plead facts demonstrating that Plaintiff is qualified to maintain her position as Director of Education Graduate Programs for the same reasons discussed for her Title VII claim. *See supra* Part A.

b. *Element (4): Whether Plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive*

Defendant argues that even if the Plaintiff could establish that she is qualified, her ADEA claim also fails because her Complaint is silent on the age of her replacement. (D.I. 19 at 13–14). Defendant then stresses that causation is crucial here: even if she did plead that she was replaced by a younger employee, the bare allegation is insufficient to state a claim under the ADEA. (*Id.*; *see also White v. FedEx Corp.*, No. 19-cv-325, 2019 WL 5102168, at *3 (M.D. Pa. Oct. 11, 2019) ("Regarding Plaintiff's assertion that he was replaced by a substantially younger person, courts presented with similarly bare allegations have found them insufficient to state a claim under the ADEA.")).

In response, Plaintiff argues that Defendant can obtain information in discovery to reveal the exact age of her replacement. (D.I. 23 at 5). Plaintiff contends that it is sufficient that she pled that she is over the age of forty and that her replacement was younger than her. (*Id.*).

In reply, Defendant acknowledges that Plaintiff pled that she is over the age of 40 and that her replacement was younger than her, but that this is not enough to survive the discovery stage requirement of "sufficiently younger" to infer age discrimination. (D.I. 24 at 6–7). Furthermore,

11

even if she had included age in her pleadings, it would not be enough to suggest that age was in any way a motivating factor for her removal or termination. (*Id.* at 7).

Drawing all reasonable inferences in Plaintiff's favor, the Complaint fails to plead facts demonstrating that she was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. Plaintiff's Complaint is silent on the age of her replacement, offering no "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's ADEA age discrimination claim does not withstand the motion to dismiss because Plaintiff fails to adequately plead two of the four required elements.

C.  FMLA Claim

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). To prevail on an FMLA interference claim, a plaintiff must prove (1) she was entitled to take FMLA leave, and (2) her employer denied her right to do so. *See Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

a.  *Retaliation claim*

Defendant argues that Plaintiff does not allege facts sufficient to infer a causal connection between her termination and her leave. (D.I. 19 at 14–15). As for the classes she was assigned to teach, because the proposed fall 2024 teaching schedule was the same as the proposed 2024 spring teaching schedule, Defendant argues there could be no retaliation for taking leave. (*Id.*). As to her termination, Defendant argues it only occurred after Plaintiff refused to teach the undergraduate

12

classes to which she was assigned, was unwilling to compromise, and was repeatedly unresponsive to the Defendant's attempts to discuss the situation with her. (*Id.*).

In response, Plaintiff argues that the issue of whether the allegations of the Complaint establish causation cannot be decided in a motion to dismiss and instead must be decided after discovery is taken. (D.I. 23 at 6).

In reply, Defendant argues that while Plaintiff attempted to plead an FMLA retaliation claim, she did not allege any facts sufficient to infer a causal connection between her termination and her leave to support a claim for FMLA retaliation. (D.I. 24 at 7–9).

Drawing all reasonable inferences in Plaintiff's favor, the Complaint fails to plead facts inferring a causal connection between her termination and her leave. Because Plaintiff's proposed class schedule was the same in the fall as it had been in the spring, and her termination occurred only after she refused to teach undergraduate courses and was unresponsive to Defendant, Plaintiff alleged no facts to suggest retaliation for taking leave.

### b. *Interference claim*

Plaintiff also raises an interference claim in her response that she claims to have pled in her Complaint. (D.I. 23 at 5–6).

In reply, Defendant argues Plaintiff did not plead an FMLA interference claim in her Complaint and there could be no interference anyway since she was granted FMLA leave. (D.I. 24 at 9). Because interference with FMLA arises only when leave under FMLA is denied and nowhere in her Complaint did Plaintiff allege such denial, the claim must fail. (*Id.*).

Drawing all reasonable inferences in Plaintiff's favor, the Plaintiff does not plead an FMLA interference claim in her Complaint. The only mention of the word "interference" is in paragraph 66 of the Complaint, stating: "[Plaintiff] had a federal statutory right under the FMLA

13

to exercise her rights thereunder without interference or retaliation." (D.I. 17 ¶ 66). Because paragraph 67 and the rest of the Complaint only focus on retaliation, (*see* D.I. 17 ¶¶ 67–68), the mention of interference was merely a threadbare recital of the elements of a cause of action that Plaintiff drew a conclusory statement from and not a sufficiently pled independent claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff's FMLA claim does not withstand the motion to dismiss because Plaintiff fails to adequately plead one of the required elements of a retaliation claim and does not plead an interference claim.

## IV.    **CONCLUSION**

Because Plaintiff fails to plead facts sufficient to support her three claims, Plaintiff's claims are dismissed with prejudice.

14